UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY PITCHER,

    Plaintiff,                                                     Hon. Janet T. Neff

v.                                                                               Case No. 1:09-CV-241

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the administrative record. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether

the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The Commissioner is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *Id*.

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). Substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Service*, 735 F.2d 962, 963 (6th Cir. 1984); *Wyatt v. HHS*, 974 F.2d 680, 683 (6th Cir. 1992) (citation omitted).

It has been widely recognized that the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Kay v. Callahan*, 109 F.3d 270 (6th Cir. 1997).

**PROCEDURAL POSTURE**

Plaintiff was 38 years old at the time of the ALJ's decision. (Tr. 20). Plaintiff successfully completed high school and previously worked as a bar manager, arc welder, and lead operator. (Tr. 21, 277-78, 287-88).

Plaintiff applied for benefits on July 29, 2004, alleging disability since January 2, 2004. (Tr. 13). Plaintiff alleges his disability is a result of degenerative disc disease and chronic obstructive pulmonary disease (COPD). (Tr. 13, 21). Plaintiff's initial application for benefits was denied. (Tr. 33). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 30). Plaintiff appeared before ALJ B. Lloyd Blair on June 5, 2007, with testimony being offered by Plaintiff and vocational expert, Donald Hecker. In a written decision dated July 26, 2007, the ALJ determined that Plaintiff was not disabled. (Tr. 217-24). The Appeals Council subsequently remanded the case for further consideration.[1]

A rehearing was held on October 26, 2008, by ALJ Patricia Hartman. Testimony was offered by Plaintiff and vocational expert, Heather Benton. (Tr. 273-302). In a written opinion dated November 25, 2008, ALJ Hartman determined that Plaintiff was not disabled. (Tr. 13-21). The Appeals Council subsequently denied Plaintiff's request for review. (Tr. 4-6). Plaintiff, appearing without the benefit of counsel, initiated this appeal pursuant to 42 U.S.C. § 450(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2009. (Tr. 15). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that

---

[1] The Appeals Council determined that the ALJ's decision did not adequately address the opinion of a treating physician and that Plaintiff's credibility required further assessment. (Tr. 229).

he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

X-ray reports dated January 12, 2000, showed degenerative disc disease at L5-S1. (Tr. 100). Plaintiff underwent a laminectomy at L5/S1 in November of 2000, which helped to relieve his lower back pain. (Tr. 15, 254-55).

On December 1, 2003, Plaintiff reported to Dr. Ramona Kwapiszewski that he was experiencing back pain. (Tr. 114). The doctor noted that Plaintiff exhibited a "decreased range of motion by 10 degrees." (Tr. 114). Plaintiff returned for follow-up care with the doctor on December 15, 2003. (Tr. 113). The doctor noted that Plaintiff exhibited "no reflexes" in his right leg, but that he also demonstrated "no decrease in range of motion." (Tr. 113). The doctor diagnosed Plaintiff with "lumbago with right leg radiculopathy." (Tr. 113).

On December 22, 2003, Plaintiff participated in an MRI of his lumbar spine. (Tr. 97). The MRI showed a "mild degree of residual narrowing of the right recess" and "a relatively broad-based somewhat ossified shelf-life disc extrusion, likely disc osteophyte complex which does result in encroachment upon the S1 nerve root." (Tr. 97). On January 8, 2004, Plaintiff was referred to a pain clinic and to a neurologist for consultations. (Tr. 112).

Dr. Kwapiszewski examined Plaintiff on July 8, 2004. (Tr. 111). Plaintiff reported that he was experiencing right knee pain, "chronic" low back pain, and chronic obstructive pulmonary disease (COPD). (Tr. 111). The doctor referred Plaintiff for a sleep study. (Tr. 111).

Plaintiff participated in a stress test on July 15, 2004. (Tr. 120). The results demonstrated

4

that Plaintiff's aerobic capacity was "average." (Tr. 120).

On August 26, 2004, Plaintiff was evaluated by Dr. Richard MacAuley at Sleep Diagnostics of Michigan. (Tr. 127). Plaintiff was evaluated for a history of "excessive sleepiness, snoring, and witnessed sleep apnea." (Tr. 127). The doctor noted that Plaintiff was previously diagnosed with Obstructive Sleep Apnea Syndrome (OSAS). (Tr. 127). Plaintiff was prescribed a continuous positive airway pressure machine (CPAP) but "never picked it up because his insurance did not cover it, and he could not afford the CPAP device." (Tr. 127). Dr. MacAuley ordered a diagnostic sleep study for Plaintiff. (Tr. 127-28).

X-rays were taken of Plaintiff's cervical spine on August 27, 2004. (Tr. 93). The results indicated "minimal degenerative changes at C5-6." (Tr. 93). Plaintiff participated in an MRI examination of his cervical spine on September 1, 2004. (Tr. 91) The report indicated "mild uncovertebral degenerative change at C3-4 with facet hypertrophy causing moderate right and mild left foraminal narrowing." (Tr. 91). Additionally, the MRI examination indicated "C6-7 shows mild uncovertebral degenerative change without significant central or foraminal stenosis." (Tr. 92).

On September 23, 2004, Plaintiff participated in a polysomnography test with CPAP. (Tr. 126). The test showed that Plaintiff tolerated the CPAP and that it "effectively eliminated" his respiratory events. (Tr. 126). Plaintiff returned for follow-up care at Sleep Diagnostics of Michigan and was examined by Physician's Assistant, Shannon LaLonde on October 21, 2004. (Tr. 125). Ms. LaLonde noted that Plaintiff "has not been fully compliant with his CPAP device" and documented that full compliance would allow her to "be able to more adequately judge his progress regarding daytime functioning." (Tr. 125).

On October 27, 2004, Plaintiff was examined by Dr. Helene Jones for a consultative

examination. (Tr. 136). Plaintiff reported that he drives and independently performs his activities of daily living. (Tr. 136-37). Additionally, Plaintiff reported that "he occasionally may help a buddy out doing some bulldozer work or some car work." (Tr. 136-37). Dr. Jones diagnosed Plaintiff with "[c]hronic myofascial back pain, lumbar degenerative disc disease" and "cervicalgia with very mild cervical degenerative disc disease without any acute radiculopathy." (Tr. 136-38). Dr. Jones noted that Plaintiff exhibited "mild paralumbar and posterior cervical occipital tenderness" but "normal range of motion." (Tr. 136-38).

Plaintiff returned to Sleep Diagnostics of Michigan on December 9, 2004, where it was noted that he continued to be "noncompliant with CPAP therapy secondary to an ill-fitting mask." (Tr. 123). Plaintiff was asked to work with the sleep technician to assess the fit of his mask. (Tr. 123). Plaintiff was scheduled for a follow-up appointment on December 23, 2004, but rescheduled the appointment several times and ultimately never returned. (Tr. 122).

On January 6, 2005, Plaintiff treated with Dr. Scott Kuhnert. (Tr. 158). Plaintiff complained of "intermittent weakness." (Tr. 158). Plaintiff rated his pain at "5 out of 10" and stated that his symptoms worsen with overhead activity. (Tr. 158). Dr. Kuhnert noted in his physical examination that Plaintiff demonstrated 5/5 strength in all of his extremities and a "near full range of motion of the cervical spine." (Tr. 158). Dr. Kuhnert diagnosed Plaintiff with neck pain "most likely due to mild degenerative changes" and "chronic low back pain status post laminectomy." (Tr. 158).

On January 17, 2005, Plaintiff participated in an electrodiagnostic study that showed "bilateral cervical radiculopathy" at the C6-7 level and C7-8 level. (Tr. 161). On January 25, 2005, Plaintiff received a cervical epidural injection from Dr. Raymond Sohn. (Tr. 157).

Plaintiff returned to the pain clinic on February 25, 2005, and was evaluated by Dr. Douglas

Bez. (Tr 156). Plaintiff reported to Dr. Bez that the recent epidural injection improved his condition and that "his only problem is usually late in the day." (Tr. 156).

Plaintiff participated in an MRI study of his cervical spine on March 30, 2005. (Tr. 165). The MRI showed "mild degenerative disk changes at the C3-C4, C5-C6, and C6-C7 levels." (Tr. 165).

Dr. John Kim evaluated Plaintiff for a surgical consultation on May 18, 2005. (Tr. 167). Dr. Kim reviewed Plaintiff's recent MRI study and opined that "given the mild degree of stenosis, I don't think surgery would be of any benefit." (Tr. 167).

On June 27, 2005, Plaintiff reported to Dr. Bez that his pain "decreased to a level of 4 to 5." (Tr. 150). Dr. Bez noted that Plaintiff is "only intermittently taking his medications." (Tr. 150). Plaintiff returned to the pain clinic on July 26, 2005, and was evaluated by Dr. Kuhnert. (Tr. 149). The doctor noted that Plaintiff "appears to be taking [his medications] on an intermittent basis." (Tr. 149).

Plaintiff was evaluated by Dr. Kwapiszewski on September 26, 2005, for a complaint of right sided back pain. (Tr. 101). Treatment notes show that Plaintiff demonstrated a "full range of motion" in his extremities, as well as, "normal gait and station." (Tr. 101).

Plaintiff was evaluated at the Pulmonary Clinic at Hayes Green Beach Memorial Hospital on March 21, 2006. (Tr. 212). Plaintiff demonstrated bilaterally symmetrical breath sounds and "bilateral expiratory wheezes with harsh fascicular wheezing." (Tr. 212). On June 13, 2006, Dr. Gauresh Kashyap evaluated Plaintiff's allegedly "severe asthma." (Tr. 209). Plaintiff reported experiencing a temporary improvement in his condition. (Tr. 209). The doctor noted that Plaintiff "has been noncompliant with taking his medications." (Tr. 209).

Plaintiff was treated by Hayes Green Beach Memorial Hospital for his asthma on April 30, 2007, and again on May 2, 2007. (Tr. 177). Triage notes document that Plaintiff exhibited "audible wheezing," "did not have scripts filled," and "continues to smoke." (Tr. 190). Treatment notes dated May 2, 2007, document that the Plaintiff is "non-[compliant] with his prophylactic medication." (Tr.177). Progress notes indicate that on May 6, 2007, Plaintiff demonstrated an "improved" condition. (Tr. 181).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**B. The ALJ's Decision**

At step one the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity since January 2, 2004, the alleged onset date." (Tr. 15). At step two the ALJ found that Plaintiff has the following severe impairments: obesity, degenerative disc disease, status post lumbar laminectomy, chronic obstructive pulmonary disease, emphysema, obstructive sleep apnea, and tobacco abuse. (Tr. 15). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing Impairments in 20 C.F.R. Pt. 404 Subpt. P, App. 1. (Tr. 17).

At step four the ALJ considered the entire medical record and determined that Plaintiff retains the RFC to perform light[3] duty work with the following restrictions: no use of ladders, ropes, or scaffolds; only occasional stooping, crawling, crouching, or stair climbing; no use of foot controls; no overhead work; no exposure to fumes, odors, dust, gasses, scents, chemicals poor ventilation, or extreme cold; no work around unprotected machinery or unprotected heights; and no use of vibrating pneumatic, torque, or power tools. (Tr. 18).

At step five, the ALJ concluded that although Plaintiff's RFC would preclude him from his past relevant work, a significant number of jobs existed in the national economy that Plaintiff would be able to perform, notwithstanding his limitations. (Tr. 20). In making this determination the ALJ

---

[3] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

enlisted the assistance of an independent vocational expert. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exists a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Heather Benton.

The ALJ posed hypothetical questions to Ms. Benton asking if an individual restricted to light duty work with the limitations similar to those in Plaintiff's RFC would be able to work in the national economy. Ms. Benton opined that an individual with similar limitations would be able to perform a variety of light duty jobs, including, among others, cashier, interviewer, and information clerk. (Tr. 300). With the assistance of Ms. Benton's testimony, the ALJ concluded that a significant number of jobs existed within Michigan, that Plaintiff could perform, such limitations notwithstanding. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1998) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006) (870 jobs in the region constitute a significant number).

As previously noted, Plaintiff is proceeding in this matter without the benefit of counsel.

Accordingly, the Court has interpreted Plaintiff's pleadings indulgently, as required by law. In response to the Court's Order directing the parties to submit briefs in support of their respective positions, Plaintiff submitted a brief note in which he asserts that his application for benefits was wrongly denied. Interpreting Plaintiff's brief indulgently, the only issue that could plausibly have been raised is that the ALJ's decision is not supported by substantial evidence.

The Court has thoroughly reviewed the record and finds nothing that calls into question the accuracy of the ALJ's decision. The ALJ determined that the objective medical evidence did not corroborate Plaintiff's subjective allegations of pain. The Court finds that this decision is supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan*

standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, the Court finds that the ALJ's determination that these impairments do not render Plaintiff disabled and preclude him from employment is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's decision be affirmed.

## CONCLUSION

Accordingly, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Therefore, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: April 19, 2010              /s/ Ellen S. Carmody
                                  ELLEN S. CARMODY
                                  United States Magistrate Judge